666 A.2d 721

**ELMWOOD FEDERAL SAVINGS BANK**

v.

**Stephen R. PARKER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1995.

Filed Oct. 19, 1995.

Stephen R. Parker, Pro Se, appellant.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

CIRILLO, Judge:

Appellant Stephen R. Parker appeals pro se from an order of the Court of Common Pleas of Delaware County. We dismiss.

On April 24, 1984, Parker executed and delivered a residential adjustable rate mortgage note in favor of appellee Elmwood Federal Savings Bank (Bank).[1] In addition to monthly payments of principal and interest, Parker was required under the mortgage to pay a sum equal to one-twelfth of the yearly taxes and yearly insurance premium installments with each monthly payment. On June 1, 1990, the interest rate on the mortgage was adjusted to 8.75 percent, reducing the monthly payment due for principal and interest to $165.53. Parker's monthly mortgage payment, including taxes and insurance, totalled $312.89. In August of 1990, Parker began making monthly payments in the amount of $165.53, and discontinued the insurance and tax payments.

In October of 1991, the Bank notified Parker of his default and of its intention to foreclose on the mortgage. Thereafter, in April of 1992, the Bank filed a civil action in mortgage foreclosure against Parker. The complaint alleged that Parker was in default on the mortgage, the amount computed as follows:

| | |
|---|---|
| Principal | $19,818.54 |
| Interest | 2,236.29 |
| Late Fees | 173.14 |
| Attorney Fees | 2,239.85 |
| Costs | 170.50 |
| TOTAL | $24,638.32 |

On August 6, 1993, following a bench trial before the Honorable Charles C. Keeler, the court made findings of fact and entered a verdict in favor of the Bank. Judge Keeler found that Parker was in default of his mortgage and note for failure to make the monthly tax and insurance payments.[2] On

1. We note that Elmwood Federal Savings Bank has not filed an appellee's brief.

2. Paragraph 2 of the Uniform Covenants of the Mortgage provides:

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over the Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insur-

August 23, 1993, Parker filed a notice of appeal. The trial court ordered Parker to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his 1925(b) statement, Parker raised several allegations of error, namely:

Failure of Hon. Charles C. Keeler to decide on counterclaim;

Ineffectiveness of coun[sel] Richard L. Raymond, Esq. in regard to all matters and specifically to his refusal to ask for sanctions against Elmwood Federal in regard to plaintiff[']s inadequate response to interrogatories;

Failure of the Hon. Charles C. Keeler to rule on objections to admission of plaintiff[']s notice of foreclosure;

Lack of time between notice of and date of trial.

On the record before us, we are unable to determine that the trial court disposed of these claims. In any event, on December 6, 1993, this court quashed Parker's appeal as interlocutory because no judgment had been entered on the verdict. *See Fernandes v. Warminster Municipal Authority,* 296 Pa.Super. 523, 442 A.2d 1174 (1982) (appeal taken from verdict quashed where no judgment had been entered). On November 5, 1993, however, prior to this court's order quashing the appeal, judgment had been entered on the verdict in the amount of $26,653.87, plus accrued interest, late fees, and other insurance and tax payments paid by the Bank on behalf of Parker. Thereafter, on April 25, 1994, this court entered a second order, acknowledging that, in fact, judgment had been entered on the verdict. This court, nonetheless, dismissed the appeal once again, stating:

## ORDER

[AND NOW, this 25th day of April, 1994,] Although judgment has been entered on the trial court docket on November 5, 1993, post-trial motions were not filed following the

ance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.

entry of the verdict on August 6, 1993. Pa.R.C.P. 227.1(c)(2) states in pertinent part: "Post-trial motions *shall* be filed within ten days after . . . the filing of the decision . . . in the case of a trial without jury." (emphasis supplied). Pa.R.A.P. 302(a) states: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." [citations omitted]. Therefore, the court hereby DISMISSES the appeal at No. 3771 Philadelphia 1993.

Following this order, Parker filed an emergency petition to open or strike the judgment and writ of execution. Emergency relief was denied.

On June 23, 1994, June 30, 1994, and July 7, 1994, publication and notice were made of a sheriff's sale on the property.[3] The sheriff's sale was scheduled for July 15, 1994.

On July 8, 1994, Parker filed a motion for post-trial relief, raising thirty points of error, all of which had previously been stated in Parker's petition for emergency relief and stay of execution.

On July 14, 1994, one day prior to the scheduled sheriff's sale, National Bank of the Main Line sent a letter addressed to Parker, confirming receipt of $18,208.25 as full reinstatement of the mortgage. The letter also stated that the "sheriff's sale scheduled for July 15, 1994 has been cancelled as a result of this payment[,]" and that "[r]egular monthly payments of $292.56 should resume effective August 1, 1994." On August 10, 1994, the writ of execution was stayed.

As a result of his payment to cure the default, Parker stayed the sheriff's sale and saved his property from foreclosure. Notwithstanding this, Parker filed the present appeal to this court, *pro se,* arguing that the instant matter was one of "foreclosure by ambush," and that the Bank had

---

**3.** The purpose of a sheriff's sale in mortgage foreclosure proceedings is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor. *See* 22 Standard Pennsylvania Practice § 121:95.

imposed excessive and fraudulent fees and charges "under threat of improper Sheriff's sale." [4]

None of these claims, however, have been addressed at the trial court level. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Procedurally, Parker's case is racked with error; although the clerk of this court inadvertently quashed for failure to enter judgment, when judgment had in fact been entered, the appeal was again quashed for failure to file timely post-trial motions. We note, however, that Parker did file a concise statement of reasons relied upon for appeal in response to the trial court's order. Pa.R.A.P. 1925(b). Nonetheless, the record before us provides no indication that the trial court addressed the claims presented. In the interim, the sheriff's sale was stayed as a result of payment.

Parker, as a defaulting mortgagor of land, had the right to redeem the mortgaged property upon payment of the mortgage debt prior to the "fall of the hammer" at a sheriff's sale. *See Re Evergreen Memorial Park Assoc.*, 308 F.2d 65, 67 (3d Cir.1962) (applying Pennsylvania law); *see also Marx Realty & Improvement Co. v. Boulevard Center, Inc.*, 398 Pa. 1, 156 A.2d 827 (1959). This he did. *See generally* 22 Standard Pennsylvania Practice 2d § 121:16–121:18 (right to cure default). Parker did not, however, challenge the assessment of damages.[5] Parker paid the amount required for full reinstatement of the mortgage.

4. We note that Parker appealed from the entry of an adverse order pursuant to Pa.R.A.P. 301(e). Rule 301(e) states:

Where the exigency of the case is such as to impel an immediate appeal and the party intending to appeal an adverse action is unable to secure the formal entry of an appealable order pursuant to the usual procedures, the party may file in the lower court and serve a praecipe for entry of an adverse order, which action shall constitute entry of an appealable order for the purposes of these rules. The interlocutory or final nature of the action shall not be affected by this subdivision.

Pa.R.A.P. 301(e).

5. The Note provides, in paragraph 5,

**BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**

Parker had his day in court. A trial was had on the complaint in mortgage foreclosure. Judgment was entered against Parker and, prior to the sheriff's sale, Parker successfully stayed the sale averring the only defense available to him—payment.[6] As stated above, Parker made no challenge at that time to the amount in default. The instant appeal, therefore, leaves this court with nothing preserved for review. Consequently, we find it necessary to dismiss this appeal for want of reviewable claims.

Appeal dismissed.

---

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days from the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4% of my overdue payment of principal and interest.

＊  ＊  ＊  ＊  ＊  ＊

**(D) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its reasonable costs and expenses to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees.

See Steele v. Lineberger, 72 Pa. 239 (1872) (if a plaintiff has a judgment in a mortgage foreclosure action, he is entitled to costs); see also 22 Standard Pennsylvania Practice § 121:76.

6. The holder of a mortgage can legally proceed to enforce the mortgage either by foreclosure proceedings on the mortgage or by obtaining judgment on the bond accompanying the mortgage and issuing a writ of execution. See Harper v. Lukens, 271 Pa. 144, 112 A. 636 (1921); Cooper v. Lucas, 152 Pa.Super. 655, 33 A.2d 466 (1943); see also 22 Standard Pennsylvania Practice 2d § 121:3. These remedies may be pursued concurrently or consecutively, although the mortgagee, of course, may have only one satisfaction. Harper, supra. Cf. Batten v. Jurist, 306 Pa. 64, 158 A. 557 (1932); Mancine v. Concord–Liberty Sav. & Loan Assoc., 299 Pa.Super. 260, 445 A.2d 744 (1982).